UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 15-61-DLB

BRYAN EDWARD VANHOOSE                                        PLAINTIFF

vs.                    **MEMORANDUM OPINION AND ORDER**

CAROLYN W. COLVIN, Acting                               DEFENDANT
Commissioner of Social Security

************************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **affirm** the Commissioner's decision, as it is supported by substantial evidence.

I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Bryan Edward Vanhoose filed his current application for Disability Insurance Benefits (DIB) payments, alleging disability as of December 10, 2010. (Tr. 198). Plaintiff's claim was denied initially and on reconsideration. On April 1, 2014, Administrative Law Judge Michele Kelley held an administrative hearing via video at Plaintiff's request. (Tr. 9). On November 10, 2010, ALJ Kelley issued an unfavorable decision, denying Plaintiff's claim. (*Id.*). Plaintiff subsequently requested that the Appeals Council review that decision, which affirmed the decision of ALJ Kelley (Tr. 1). Plaintiff filed an appeal with this Court on July 16, 2015. (Doc. # 1). Plaintiff and Commissioner have filed their cross-

1

motions for summary judgment (Docs. # 13 & 14), making this matter ripe for review.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.	The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 14). At Step 2, the ALJ found Plaintiff's enucleation of the right eye, pain behind left eye and migraine headaches, status post fracture mid-clavicle with marked widening of the AC joint and deformity of the right rib cage, and degenerative disc disease of the cervical spine to be severe impairments within the meaning of the Regulations. (Tr. 14).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 16). Before reaching this conclusion, the ALJ determined that Plaintiff's manipulative deficits in his upper-right extremity did not meet the requirements set forth in Listing 1.02, because a recent clinical evaluation found normal motor strength, sensation, and reflexes in all extremities. And while there was some evidence of range of motion limitations in the right shoulder, there was no clinical evidence of neurological loss. Claimant is still able to prepare meals, complete household chores, and golf. In addition, there was no evidence of neurological loss or spinal stenosis in Plaintiff's cervical spine.

The ALJ found that Plaintiff's visual deficits did not meet Listing 2.02 or 2.03 because his vision in his left eye is 20/25. The ALJ then found that there were no combination of impairments that were equal in severity to any listed impairment.

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform sedentary and light work, with the following limitations:

> "He can lift and carry, push and pull 10 pounds frequently and 20 pounds occasionally. He can walk and stand six hours out of an eight-hour day and

sit six hours out of eight-hour day. He can frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He can occasionally reach overhead with the bilateral upper extremities. He should avoid concentrated exposure to extreme cold and extreme heat, and noise levels greater than three out of five on the scale set forth in the Dictionary of Occupational Titles. He should avoid even moderate exposure to vibrations or work hazards, including unprotected heights, uneven surfaces, and inherently dangerous machinery.

(Tr. 16). Given these limitations, the ALJ then found that Plaintiff is incapable of performing any past relevant work . (Tr. 21).

The ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 21). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to hypothetical questions assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 21-23). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find the following work at the light and sedentary levels of exertion: office helper (180,000 jobs nationally/ 10,000 jobs regionally); office cleaner (154,000 jobs nationally/ 8,000 jobs regionally); retail order clerk (142,000 jobs nationally/ 11,000 jobs regionally); and charge account clerk (121,000 jobs nationally/ and 6,000 jobs regionally). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social Security Act. (Tr. 28).

Importantly, ALJ Kelley also found that Plaintiff could perform all of the above jobs even if he could only frequently use his right hand to handle due to his issues with his shoulder. While the ALJ did not believe the record supported the limitation, she still

4

considered it when determining whether Plaintiff was under a disability.

Accordingly, ALJ Kelley ultimately found that Plaintiff was not disabled. This appeal followed.

### C. Analysis

On appeal, Plaintiff raises four challenges to the ALJ's determination. First, he claims that the ALJ erred by failing to include all limitations noted by his treating physicians. Second, and relatedly, he claims that failure to include all limitations led to a faulty Residual Functional Capacity assessment, which in turn caused errors in the VE's answers to ALJ Kelley's hypothetical questions. Essentially, these first two challenges question the ALj's RFC determination, and will thus be considered together. Next, Plaintiff claims that the ALJ erred by failing to find severe mental impairments. And lastly, he claims that the ALJ erred by relying on two non-examining opinions when she determined that Plaintiff had no medically determinable mental impairments.

#### 1. RFC determination

The Court finds that the ALJ's RFC determination was reasonable and is supported by substantial evidence. An RFC assessment is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p (Jul. 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to

incorporate those limitations that she finds credible in the RFC assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Here, Plaintiff complains that the ALJ erred by failing to incorporate his limitation on overhead reaching with his right arm. He also claims that failure to properly consider this limitation led to errors in the VE's assessment. However, contrary to Plaintiff's protestations, ALJ Kelley did consider the overhead reaching limitation, but did not find it credible. Specifically, she found that Plaintiff's self-reported daily functions conflicted with such a finding. Plaintiff testified that he performed errands, prepared simple meals, drove to the store, and still regularly golfed. All of these functions could be viewed as conflicting with Plaintiff's alleged limitation. Moreover, the ALJ did ask the VE about differing levels of function with Plaintiff's right arm to determine what jobs would still be available to him. The ALJ ultimately concluded that the full extent of Plaintiff's alleged limitation was not supported by substantial evidence and was not credible. Therefore, she was within her discretion to exclude that limitation from her ultimate disability determination. The Court finds no error with this decision or with the hypothetical questions posed to the VE.

### 2. Mental impairments

Next, Plaintiff contends that the ALJ erred by failing to find severe mental impairments. The second step in the disability evaluation process requires the ALJ to consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii); Soc. Sec. Ruling 96-3P, 1996 WL 374181, at *1 (July 2, 1996). An impairment is considered severe if it "significantly limits an individual's physical or mental ability to perform basic work activities." 20 C.F.R. § 404.1521(b). Basic work activities, defined as

those "abilities and aptitudes necessary to do most jobs," include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* The claimant's impairments must have lasted or be expected to last for a continuous twelve (12) month period, unless the condition is expected to result in death. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1509.

Because the Sixth Circuit has interpreted "the step two severity regulation as a '*de minimis* hurdle' in the disability determination process," meant to screen out totally frivolous claims, the severity of the impairment is "liberally construed in favor of the claimant" at this step in the analysis. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x. 425, 428 (6th Cir. 2007). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

If the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the Step-Two screening process. 20 C.F.R. § 404.1520(a)(4). Because the Regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. § 404.1545(a)(2).

For this reason, courts have consistently held that an ALJ does not commit reversible error when he or she decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with the analysis. *Maziarz v. Sec'y Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *McGlothin v. Comm'r*, 299 F. App'x. 516, 522 (6th Cir. 2008) (finding it "legally irrelevant" that the ALJ determined that some of claimant's impairments were severe and some were not because "once any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps").

Here, while Plaintiff is ostensibly challenging the ALJ's decision to find his mental impairments non-severe, that challenge will fail for the reasons stated above. However, Plaintiff seems to indicate that what he truly wishes to challenge is the ALJ's alleged decision to not consider his mental impairments at all. But despite the ALJ's seemingly summary dismissal of Plaintiff's mental impairments in her initial consideration of them, she later goes on to explain why she did not find those claims to be credible. Specifically, she found that the post-traumatic stress disorder, anxiety, and depression findings by Drs. Bayes and Pangilinan were not supported by substantial evidence. She based this finding on Plaintiff's subjective reporting, during which he denied depressive symptoms and on various treating records where he demonstrated normal mood and affect. (Tr. 19, 380, 395, 397, 472, 475, & 568). The ALJ sufficiently considered Plaintiff's mental impairments,

8

but then, relying on substantial evidence from the record, determined that any mental impairment was not medically determinable at this time.

### 3. ALJ's reliance on Drs. Demaree and Yates

Finally, Plaintiff challenges the ALJ's reliance on the opinions of Drs. Demaree and Yates, non-treating sources who evaluated Plaintiff's mental health and found no medically determinable impairments. However, the treating records support Drs. Demaree's and Yates's opinions, (*See* Tr. 19, 380, 395, 397, 472, 475, & 568), as do Plaintiff's own claims about his functionality. Accordingly, the ALJ properly gave credit to Drs. Demaree's and Yates's opinions while noting reasons for discounting the opinions of Drs. Bayes and Pangilinan. Therefore, the Court finds no error with the ALJ's assessment of the medical evidence.

## III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 13) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 14) is hereby **GRANTED**;

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 31st day of August, 2016.



K:\DATA\SocialSecurity\MOOs\Pikeville\7-15-61 Vanhoose MOO.wpd